91  599
157a 213

Frank W. Sanger, Respondent, v. Thomas Henry French Appellant.

*Contract — under what circumstances it will be considered not to have been proved.*

Where an alleged contract, relative to the production and exploitation of plays, which gives to the party who brings an action to enforce it very extraordinary powers, including the exclusive right for a period of twenty years to control the business, depends for proof of its existence solely upon the testimony of the plaintiff, which is contradicted by his own statement and acts, the court will, although it may be satisfied, notwithstanding the defendant's denial of it, that some contract was made between the parties, reverse a judgment in favor of the plaintiff.

APPEAL by the defendant, Thomas Henry French, from a judg-ment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of New York on the 3d day of July, 1894, upon the report of a referee, with notice of an inten-tion to bring up for review upon such appeal the report of the referee filed in said clerk's office the 25th day of June, 1894, and an order made at the New York Special Term and entered in said clerk's office on the 14th day of December, 1893, denying the defendant's motion to set aside the order of reference.

*A. J. Dittenhoefer* and *David Gerber*, for the appellant.

*Almon Goodwin* and *Aug. II. Vanderpoel*, for the respondent

VAN BRUNT, P. J :

The examination of the voluminous record in this case having taken so much time, there is left, before a decision must be announced, but sufficient time to state in the briefest terms the grounds upon which it seems to us that the referee's conclusion is erroneous.

The magnitude of the record prevents any attempt to refer, except in the most concise manner, to the salient points which seem to us necessarily to lead to the conclusion that neither of the parties to this action have stated the exact facts in relation to the trans-actions which have culminated in this large judgment. The plain-tiff has indulged in amplification and the defendant has been guilty of suppression. But at the outset it strikes one as an exceedingly curious circumstance that whereas in all the other dealings of these parties with each other or with persons who were associated with them in the enterprises in which they were engaged, memoranda of the arrangements were made in writing, in respect to this remark-able contract there is not the scratch of a pen in evidence of its existence.

The first thing which challenges attention is the nature of the contract itself as claimed by the plaintiff. It is certainly peculiar and gives the plaintiff remarkable powers, running as it does for a period of twenty years, which circumstance alone would naturally suggest that it should only be established by evidence which was reasonably clear and conclusive. In our judgment the plaintiff has failed by any preponderance of evidence to establish the existence of

any contract such as is claimed by him, and indeed his own oath is to the contrary. The plaintiff claims that on the 25th of April, 1887, he and the defendant agreed that they should have the first option to purchase any and all plays owned or controlled by either member of the firm of Sanger & French, including the plays owned or controlled by Samuel French & Son, of which the defendant was a member, which should be suitable for the new theater (namely the Broadway Theater) for the purpose of producing such plays at said theater and of exploiting them through the United States and Canada for the benefit of said firm of Sanger & French; that this option was alone to be exercised by the plaintiff, and in respect to which the defendant should have no voice, and that the plaintiff had the right to take not only any plays which he chose, belonging to either Sanger or French, but also any that belonged to the firm of Samuel French & Son, for the purpose of production or exploitation in the United States and Canada, and that the plaintiff was to have half of the profits arising from such production or exploitation. Thus, if the firm of Samuel French & Son owned a play, Samuel French being entitled to one-half of the profits and the defendant Thomas H. French being entitled to another, Sanger had the right to take that play for the purpose of exploitation in the United States and Canada, and receive one-half of the profits arising therefrom, and the defendant French would thereby be deprived of every dollar of profit arising from the ownership of the play, the other half of the profits necessarily belonging to Samuel French. This seems to be a monstrous contract, and as has already been suggested, it depends entirely upon the oath of Sanger, whereas the evidence shows that in every other transaction had in reference to the production of plays, or the management of the business, or the entering into new enterprises, it was always carefully reduced to writing. And this extraordinary contract is alleged to have been made in the office of the lawyer who was drawing the contracts in reference to the erection of the Broadway Theater, without a word being said to any one in regard to its having been entered into, under which it is claimed, upon the part of Sanger, that he has the right to deprive Thomas H. French of his interest in the firm of Samuel French & Son in respect to such plays as he shall choose, during the period of twenty years.

It is to be observed that this is a remarkable amplification, by a breath, of an agreement which had been proposed to be entered into at the time it was supposed that the arrangement in regard to the erection of the Broadway Theater would be entered into with Bailey. That agreement provided that the firm of Bailey, French & Sanger, or a corporation to be formed as stated in the agreement, should have the first option to purchase for production or exploitation in the United States any and all plays that might be controlled by either of the parties thereto and be suitable for production in the Broadway Theater. This did not include those owned by Samuel French & Son; Samuel French & Son were not mentioned. But Sanger swears it into his own contract. And it was because of the fact that the person who was going to occupy Bailey's position did not wish to have anything to do with the dealings in or exploiting of plays, that Sanger claims that this new contract was entered into. If he had said that the new contract was on the lines of the old proposed contract, there might have been some reason to believe that such a contract had been entered into. But when he inserts therein the selling of the rights of French & Son, which Thomas H. French had no power to do, so far as this record shows, it seems to us that it requires a little more evidence than simply Sanger's word of mouth to establish such an extraordinary proposition. And what do we have? What do we find from the evidence? We find from the evidence that notwithstanding the alleged existence of this contract giving him this right, that, so far as the receipts at the Broadway Theater and at the Boston Theater upon the first production of the play of " Little Lord Fauntleroy " were concerned, Sanger accounted weekly to French for the whole of them. And what does he say when this fact is brought to his attention? Why, that he waived those — that he had a conversation with French in which he waived them. These were supposed to be the most fruitful fields for the production of revenue under this contract — and he waived them. He did not think he had waived them when he swore to his complaint. His complaint was almost wholly devoted to reaching the proceeds of this play at the Broadway Theater. He swears that he is entitled to them; that French fraudulently retained them; he asks for a receiver to take possession of them; there were none other expressly alleged,

except those at Boston, that could be the subject of litigation at the time this action was commenced; it is what this action was brought for — to recover the plaintiff's share of these receipts which he had "waived." The only reason for his "waiving" these receipts was that he knew his conduct was absolutely inconsistent with the claim that he advanced before the referee. No one can examine that complaint and the claim that is made there and then learn that Sanger did not pretend to have any claim to the receipts at the Broadway Theater, or those received at Boston, without coming to the conclusion that there was, beyond peradventure, falsehood at the bottom of his claim somewhere.

That some arrangement was made between French & Sanger at the interview at the lawyer's office, in which it is claimed that this extraordinary contract was entered into, seems to me beyond doubt; and when the defendant denies that any such arrangement was made, it seems to me that there has been, upon his part, a suppression of what actually occurred. The subsequent conduct of the parties indicates that there was some sort of an arrangement between them, but it also shows that it was not of the character claimed upon the part of the plaintiff. If he had this extraordinary contract, why, when the Frenches were negotiating for this play, "Little Lord Fauntleroy," should he write to Thomas H. French: "Do I get a chance for a bit of it? If this is an impertinent question you need not answer it." Is this the language of the autocrat of the partnership, who had the absolute right to say what should be taken and what should be left? And yet he says, when questioned as to this, that it was a jest.

But it is urged that these parties entered into contracts under the name of Sanger & French in reference to the conduct of this business, etc. It is undoubtedly true that the name of Sanger & French was used in connection with this business, but it was used before as well as after. They were jointly interested in this Broadway Theater enterprise; they believed that their interests were identical; and in connection with the business of this theater they acted jointly and used the name of Sanger & French. In the management of the theater they were jointly interested outside of the question of the profits derived from the plays and besides those which were received by the theater, and the most of the contracts which were

·entered into in the name of Sanger & French related to the business in respect to which Sanger had " waived " all his claims under the ·alleged co-partnership agreement.

As an excuse for the conduct of Sanger in reference to some features of the business, is claimed that he did not know until just prior to the commencement of this suit that " Little Lord Fauntleroy " belonged to the firm of French & Son ; that he supposed it was the individual property of Samuel French. That this claim was without foundation is evidenced by the fact that on the 22d of September, 1888, he made an agreement with French & Son relating to the production of " Little Lord Fauntleroy," and he must thereby have known that they controlled the play. And it is another significant fact that as far as the exploiting of this play was concerned, Sanger had nothing whatever to do with it. Thomas H. French attended to the whole of this business, although it came within Sanger's particular field if he was interested in the enterprise.

We might revert to many facts tending to throw doubt upon the claim made upon the part of the plaintiff, and there are others equally potent which tend to show that the defendant's claim that there was no arrangement of any kind between himself and Sanger in regard to the exploiting of plays is without foundation.

It seems to us that the evidence shows that there was some ·arrangement, but there is no satisfactory proof in regard to its terms, the extraordinary claim made by Sanger being unsupported by anything except his own word, and that is contradicted by his oath and his acts. We cannot see how any judgment can be supported upon such evidence — certainly not one of the extraordinary character found in the case at bar affecting the rights of parties for almost a generation.

The judgment should be reversed and a new trial ordered, with ·costs to the appellant to abide the event.

PARKER, J., concurred ; FOLLETT, J., dissented.

Judgment reversed, new trial ordered, costs to appellant to abide ·event ; and order affirmed, with ten dollars costs and disbursements.